UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

                           Plaintiff,

        - against -

Murray International Trading Co., Inc.,
d/b/a Murray Int'l Trading Co., Inc.,
Buckley Chin, a/k/a Mr. Chan, John Chan,
first name unknown and John Does #1-10,

                           Defendants.
----------------------------------------X

07-CV-3781
(CPS)(SMG)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

    Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd. ("Koon Chun"), brings this action against defendants Murray International Trading Co., Inc., d/b/a Murray Int'l Trading Co., Inc. ("Murray"); Buckley Chin a/k/a/ Mr. Chan ("Chin"); John Chan, first name unknown; and John Does 1-10.[1] Plaintiff alleges that defendants engaged in: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) counterfeiting in violation of 15 U.S.C. § 1116; (3) trade dress infringement in violation of 15 U.S.C. § 1125(a); (4) unfair competition in violation of 15 U.S.C. § 1125(a); (5) dilution in violation of NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. Presently before this Court is plaintiff's motion for sanctions on account of defendants' alleged spoliation of evidence and violation of this Court's preliminary injunction order. Also before this

---

[1] The parties stipulated to the discontinuance of the action against John Chan, which was "so ordered" on November 28, 2007.

Court is defendant Chin's cross-motion seeking his dismissal from this action. For the reasons set forth below, plaintiff's motion is denied and defendant's cross-motion is also denied.

## Background

The following facts are drawn from the Complaint, the parties' submissions in connection with these motions and the record of the prior proceedings before the undersigned. The facts alleged in the Complaint are presumed to be true for the purposes of the motion to dismiss.

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun. These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world. The United States is one of plaintiff's largest markets.

Since September 1986, Plaintiff has been the owner of a trademark registered with the United States Patent and Trademark Office, featuring a distinctive design that is used on all Koon Chun products and in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the "trade dress"), which serves to distinguish the products for consumers. The label design has become associated by consumers and industry with plaintiff, and

plaintiff enjoys substantial goodwill from the label design owing to the length of use and the design's distinctive nature.[2]

*Defendants' Alleged Activities*

According to plaintiff, there exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the type made by plaintiff bearing counterfeit versions or colorable imitations of plaintiff's trademark in the United States. Over the last several years, since discovering that such counterfeiting was going on, plaintiff has initiated several actions in United States courts to halt these activities and has, on order of appropriate courts, seized a substantial number of counterfeit items. These seizures include three seizures authorized by this Court in related actions.

On July 18, 2007, this Court ordered a seizure in a related action (07-CV-2568) against defendants Kun Fung USA Trading, a/k/a Kun Fung Trading Co., Sonic Group, Inc., Wong Fat Market Inc., a/k/a Gung Fat Market, Cheung Fat Trading Inc., a/k/a Cheung Fat Market, Gung Fat Trading Inc., Metropolitan Group USA Inc., Chun Wai Chak, a/k/a Ah Chak ("Chak"), Yuan Xi Li a/k/a Li Yuen, a/k/a Ah Yuen, Xue Mei Huang, a/k/a May Huang, and Shu Fong Wong a/k/a Shu Wong, during which 17 cases of counterfeit Koon

---

[2] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

Chun products were recovered.

On August 6, 2007, this Court authorized a seizure in a second related action (07-CV-3781) against defendants Excelsior Trading Corp. d/b/a Excelsior Trading New York ("Excelsior"), L.W. Import, Inc. ("L.W."), Highland Trading, Inc. ("Highland"), Tony Lam, Tung Lam a/k/a Tony Lam ("Lam"), and Mandy Chow a/k/a Jane Chow a/k/a Ms. Chow ("Chow"). The seizure was executed on August 14, 2007, during which 236 cases and three loose cans of counterfeit Koon Chun products were recovered. Complaint ¶ 25. At the time of the seizure defendant Lam, who represented himself as the president of Excelsior, informed plaintiff's employee, Raymond Chan ("Chan"), that the counterfeit products seized were purchased from the defendants in the instant action. *Id.* ¶ 28. Lam also informed plaintiff that he purchased the seized counterfeit good from Murray's representative, "Mr. Chan," whose first name he believed to be "Buckley."

On August 15, 2007, Lam returned the Koon Chun products that were not seized by the U.S. Marshals to Murray. Lam called Murray prior to returning the goods and informed Murray that a customer had complained that the products were not good. Deposition of Buckley Chin ("Chin Dep.") at 211-212, Plaintiff's Supplemental Reply Exhibit A.[3] The returned goods were not

---

[3] Defendants note that the deposition transcript submitted by plaintiff is an uncorrected and unverified version. Defendants' Sur Reply ¶ 5.

inspected by Murray and were eventually thrown out by Murray's warehouse workers. *Id.* at 333-334.

The undersigned granted an *ex-parte* seizure order and temporary restraining order (TRO) against the defendants in this action on September 12, 2007. The TRO restrained defendants from "destroying, buying, selling or otherwise disposing of any merchandise bearing Plaintiff's Trademark which is not manufactured by the plaintiff." September 12, 2007 TRO, p. 8.

As established at the post-seizure hearing, on September 20, 2007 the United States Marshals seized invoices referring to named defendants in related actions as well inventory lists for Koon Chun products from Murray's 908 Dean Street, Brooklyn, NY location. No counterfeit Koon Chun products were found at the 908 Dean Street location.

On September 26, 2007, this Court vacated the seizure order previously issued and continued the TRO until the preliminary injunction hearing. On October 10, 2007, the parties appeared before the undersigned at which time defendants requested additional time to submit their opposition papers. The request was granted and the TRO was extended until the return date of October 24, 2007.

On October 22, 2007, Excelsior returned 109 cases of Koon Chun products to the defendants in the this action. When the goods were returned to Murray, Chin informed Murray's warehouse

workers to put the returned goods aside and that they were not to be sold. Chin Dep. at 356.

On October 23, 2007, Magistrate Judge Gold entered the stipulation of the parties regarding the preservation of evidence as a court order. The Order provided that defendants:

> shall not destroy, secret, buy, sell, alter or otherwise dispose of any evidence relevant to the within action, including any document, book, record, computer file or other evidence relating to the purchase, sale, importation or shipment of merchandise bearing Plaintiff's registered trademark . . . or any counterfeit or simulation thereof, or to the relationships among the parties hereto, and shall not destroy, secret, buy, sell, otherwise dispose of or alter any merchandise bearing Plaintiff's Trademark or any counterfeit or simulation thereof.

October 23, 2007 Order, DE 16.

During the week of November 19, 2007, plaintiff's employee Chan was informed by Lam that he had returned the products to Murray on October 22, 2007. Declaration of Raymond Chan ¶ 9; Declaration of Joseph Roccanova ¶ 17. On November 21, 2007, Koon Chun wrote to Excelsior and Lam's counsel to inform him that they were in violation of the preliminary injunction. Roccanova Declaration ¶¶ 17, 18; Letter to Kevin Tung, dated November 21, 2007, Plaintiff's Exhibit S. Counsel for Excelsior responded that his clients had inadvertently returned the Koon Chun products to Murray and that he had advised his clients of the violation of the order. Letter to Joseph Roccanova, dated November 21, 2007, Plaintiff's Exhibit T. Plaintiff then contacted counsel for Murray and learned that Murray had accepted

the return of the products and had subsequently destroyed at least 91 of the returned cases on an unspecified date. Roccanova Declaration ¶ 22.

At an unspecified time after the October 22, 2007 return, defendants were in the process of clearing their warehouse when the returned Koon Chun cases were accidentally thrown out. Declaration of Buckley Chin ¶¶ 5-6.

Subsequent to the filing of this motion, Chin states that he personally instructed three of eight warehouse workers not to throw out any Koon Chun Products and expected that they would inform the other workers of his instructions. Chin Dep. at 392-394.

On April 2 and 3, 2008, defendant Chin was deposed. During his deposition, Chin testified that Chak had informed about the action against Kun Fung et al, in July 2007. Chin Dep. at 342. However, Chak did not tell him the reason for the lawsuit or inform him of the court order enjoining the destruction of Koon Chun products. *Id.* Chin also testified that Lam had not told him about the lawsuit commenced against Excelsior et al. at the time the Koon Chun products were returned in August 2007. *Id.* at 212. With respect to the October return, Chin testified that he instructed the warehouse workers to put the products aside so that they would not be sold, but that he did not specifically instruct them to preserve the returned items. *Id.* at 356.

According to Chin, his workers have been instructed to periodically clear the warehouse of expired goods and that unsold goods which are not returned to suppliers are at times also thrown away. Chin Dep. at 363-366. However, when he told the warehouse workers to keep the Koon Chun products aside he did not do so with the understanding that the goods would be thrown out. *Id.* at 357.

## Discussion

*Spoliation of Evidence and Civil Contempt of Court*

Spoliation of evidence consists of "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

Sanctions may be imposed for the spoliation of evidence pursuant to Federal Rule of Civil Procedure 37,[4] or in the absence of a discovery order, under the court's "inherent power to control litigation." *West,* 167 F.3d at 779. The sanction imposed should: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the

---

[4] Federal Rule of Civil Procedure 37 provides for the imposition of sanctions "[i]f a party . . . fails to obey an order to provide or permit discovery . . ." Fed. R. Civ. P. 37(b).

wrongful destruction of evidence by the opposing party.'" *Id.* (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)). "In determining whether a court should exercise its authority to impose sanctions for spoliation, a threshold question is whether a party had any obligation to preserve the evidence." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991). The most severe sanctions should not be imposed unless the spoliation "'is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight.'" *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)(quoting *Hochberg v. Howlett*, 92-CV-1822, 1994 WL 174337, *3 (S.D.N.Y. 1994)); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986); *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990).

On a motion for civil contempt due to a violation of an order of the Court, the Court may exercise its inherent authority to find a party in contempt when '(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply.' *Aqua Grill, Inc. v. S.T.F.B. Corp.,* No. 96-CV-4780, 1997 WL 563305, at *3 (S.D.N.Y. 1997)(quoting *N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). "A clear and unambiguous order is one that leaves no

uncertainty in the minds of those to whom it is addressed, . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden. . ." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)(internal quotation marks and citations omitted).

Courts may impose sanctions on the party held in contempt. The purpose of civil contempt sanctions is to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Terry*, 886 F.2d at 1352. "Since a contempt order is a potent weapon . . . courts should be cautious in imposing this sanction if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Bowens v. Atlantic Maintenance Corp.*, No. 06-CV-809 2008 WL 704319, at *4 (E.D.N.Y. 2008)(internal quotation marks and citations omitted).

*Plaintiff's Claims*

Plaintiff alleges two discrete incidents of evidence spoliation on the part of defendants. Plaintiff seeks sanctions in the form of striking defendants' answer and entering a default judgment against them or in the alternative, precluding defendants' opposition to plaintiff's claims and granting a presumption in plaintiff's favor on all of its claims.

The first incident occurred on August 15, 2007, almost one

month prior to the commencement of the instant action.  At the
time Lam returned the goods he did not inform Chin about the
lawsuit pending against him.  Nor did Chin have notice of the
nature of the action commenced against Chak.  Because the
defendants were not parties to this action until September 2007,
and were therefore not aware of plaintiff's claims against them,
they cannot be held responsible for the spoliation of evidence or
be held in contempt of court for accepting the return of Koon
Chun products in August 2007.

With respect to the October 22, 2007 transfer of Koon Chun
products, none of the orders issued by this Court have prohibited
the acceptance of Koon Chun product returns.  However, once
defendants were in possession of the returned items, they were
under an obligation not to destroy any evidence.  Defendants do
not dispute their obligation to preserve evidence nor do they
dispute the destruction of at least 91 cases returned to them.[5]

Despite defendants' failure to meet their obligations, the
harsh sanctions that plaintiff seeks are not warranted.  The
record does not establish that defendants' conduct was anything
worse than negligent.  Defendants have otherwise complied with
their obligations with respect to discovery and the Court's

---

[5] Plaintiff argues that the inconsistency between Chin's declaration in connection with this motion and his deposition testimony about the instructions he gave to Murray's warehouse workers on the handling of the October 22, 2007 returned items, supports its claim that defendants spoliated evidence.  However, it is not entirely from the comparison of the declaration and deposition transcript that Chin's statements are inconsistent.

orders. Although the destroyed cases would potentially support plaintiff's claims, their destruction does not severely prejudice plaintiff. More than 236 cases of counterfeit products have already been seized from Excelsior, which have been identified as products purchased from the defendants in this action, and plaintiff also has invoices for the cases that were destroyed. Plaintiff has not identified any other losses on account of the destruction of the counterfeit products. Accordingly, I find that sanctions against defendants for the spoliation of evidence are not warranted.

With respect to the civil contempt motion, defendants do not deny that they had the obligation to preserve evidence nor do they dispute that this Court's order was clear and unambiguous. However, because the defendants have otherwise complied with their discovery obligations as well as court orders and for the reasons discussed above, defendants' actions do not merit sanctions. Accordingly, plaintiff's motion for sanctions is denied.

*Rule 12(b)(6) Motion to Dismiss Standard*

In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of

law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). Indeed, conclusory allegations "will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970 (2007). Although the complaint need not provide "detailed factual allegations," *id.* at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007)(applying the standard of plausibility outside *Twombly*'s anti-trust context), it must "amplify a claim with some factual allegations . . . to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11). The test is no longer whether there is "no set of facts" that plaintiff could

prove "which would entitle him to relief." *Bell Atlantic*, 127 S.Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

*Defendant Chin's Motion to Dismiss*

Defendant Chin argues that he should be dismissed from this action because as a corporate officer of Murray he may not be held personally liable for Murray's actions.

Corporate officers may be held personally liable for trademark infringement and unfair competition under the Lanham Act, "if the officer is a 'moving, active conscious force behind [the defendant corporation's] infringement.'" *Martal Cosmetics, Ltd. v. International Beauty Exchange Inc.*, No. 01-CV-7595, 2007 WL 895697, at *23 (E.D.N.Y. 2007)(quoting *Bambu Sales, Inc. v. Sultana Crackers,* 683 F.Supp. 899, 913 (E.D.N.Y. 1988)). In order to subject an officer to personal liability, it is sufficient to show that the officer "'authorized and approved the acts of unfair competition which are the basis of the corporation's liability. . .'" *Id.* "[A] defendant's belief that the products at issue were genuine and non-infringing is

'irrelevant' to the disposition of a Lanham Act claim . . ." *Id.* (citing *Gucci Am., v. Action Activewear, Inc.,* 759 F.Supp. 1060, 1065 (S.D.N.Y. 1991)).

Plaintiff alleges that the defendants, including Chin, are the source of the counterfeit goods seized from Excelsior in August 2007, that defendants are deliberately offering for sale counterfeit Koon Chun products, and that plaintiff has not authorized defendants' use of the Koon Chun trademark. These allegations are sufficient to support a plausible claim of defendant Chin's personal liability for trademark infringement and unfair competition. Accordingly, defendant's motion to dismiss is denied.

## Conclusion

For the reasons set forth above, plaintiff's motion is denied and defendant's cross-motion is also denied. The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated: Brooklyn, NY
April 14, 2008

By:       /s/ Charles P. Sifton (electronically signed)
                United States District Judge